494 P.2d 953

**Myrna FABRIZIO, Plaintiff and Appellant,**

v.

**FIDELITY AND GUARANTY INSURANCE COMPANY, Defendant and Respondent.**

No. 12596.

Supreme Court of Utah.

March 8, 1972.

---

———◆———

J. Harold Call, Heber City, David Sam, Duchesne, for plaintiff and appellant.

Jack L. Schoenhals, of Mark & Schoenhals, Salt Lake City, for defendant and respondent.

TUCKETT, Justice:

The plaintiff, Myrna Fabrizio, filed this action in the court below for the purpose of seeking a recovery under an insurance contract she claims that her deceased husband entered into with the defendant.

On June 27, 1967, Delbert Fabrizio went to the First Security Bank of Roosevelt, Utah, for the purpose of negotiating a loan. The bank manager suggested that Mr. Fabrizio secure additional life insurance to guarantee payment of the loan in the event of Fabrizio's death. The Central Utah Insurance Agency at Roosevelt was contacted and Gale Holt, its manager, discussed the matter of insurance with Fabrizio who at that time made application for insurance. The application signed by Fabrizio contained language which we deem pertinent:

. . . I agree that no insurance shall take effect unless and until the policy has

been delivered to and received and accepted by me and the first premium paid during the life of the Proposed Insured and while his state of health is as stated in the application, except as provided in the Conditional Receipt bearing the same number as this application of a premium has been paid as indicated in item 21 above and such Receipt issued.

Fabrizio was informed that it would be necessary that he submit to a physical examination by a physician. On June 30, 1967, Fabrizio was examined by a physician at Roosevelt and the report of the examination was forwarded to the defendant.

A few days after the date of the application Holt delivered to Fabrizio a conditional receipt which after reciting the receipt of the first premium in dollars and cents contained the following provision:

Insurance under the terms of the policy applied for and supplementary provision(s) if applied for, and subject to the limits specified below shall take effect as of the last of any medical examinations or tests required under the rules and practices of the Company or the date of this payment whichever shall be the later, provided on that date the Proposed Insured(s), in the opinion of the Company's authorized officers at its Home Office, was/were insurable and acceptable under the rules and practices of the Company as a standard risk for the

policy and/or supplementary provision in the amount, on the plan and otherwise exactly as applied for; otherwise there shall be no liability on the part of the Company except to return this payment in the form of the Company's check.

On July 7, 1967, defendant forwarded a memorandum to its Salt Lake office and also to Gale Holt which stated that Fabrizio would not be issued the policy applied for and advised the agent to determine whether Fabrizio would be interested in other plans of insurance carrying a higher rate of premium. The memorandum also stated that it would be necessary to have a report from Fabrizio's attending physician and a blood pressure recheck. The memorandum was received by Holt on July 12 and he immediately forwarded the information to Fabrizio by letter. Fabrizio did not respond to the letter nor to follow-up letters written to him by Holt.

On August 31, 1967, the home office of the defendant Insurance Company forwarded to its Salt Lake office the refund check of the first premium paid by Fabrizio. The check was forwarded to Gale Holt and he in turn tendered it to Fabrizio on September 9, 1967. At the time of the tender Holt discussed with Fabrizio other policies of insurance at a higher premium rate. Fabrizio was also informed that an additional physical report would be necessary. On September 11, 1967, after Holt had telephoned the Salt Lake office of

the Insurance Company he mailed the refund check together with an additional $150.50 to the Salt Lake office of the defendant. The letter was received at the Salt Lake office on September 13. Fabrizio was accidentally killed on September 12. Fabrizio did not submit to a further physical examination prior to his death.

Based upon the above facts the trial court concluded that there had been no acceptance by the defendant of Fabrizio's second application for insurance and entered judgment for the defendant. The plaintiff is here seeking a reversal. It is the plaintiff's contention that our decision in the case of Prince v. Western Empire Life Insurance Company[1] is controlling here. We are of the opinion that the facts shown here do not bring it within the decision of the Prince case. In the Prince case it would appear that a binding receipt had been issued effective upon completion of the medical examination provided that the applicant was an insurable risk. In this case the defendant had rejected Fabrizio's first application and he was informed that it would be necessary that a further physical report should be obtained before he would be considered for insurance even at a higher rate. It should be noted that the wording of the receipt in this case contains language dissimilar to the receipt in the Prince case. The language here provides that the insurance take effect "as of the last of any medical examinations or tests required under the rules and practices of the Company or the date of this payment whichever shall be the later . . . ."

We have carefully reviewed the record in this case and we do not discover error which would require the decision of the trial court to be reversed. The judgment of the court below is affirmed. Respondent is entitled to costs.

CALLISTER, C. J., and HENRIOD, ELLETT and CROCKETT, JJ., concur.

_____

1. 19 Utah 2d 174, 428 P.2d 163.